## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JAMES HERBERT BOYD, JR. ET AL.,** | * | |
| **INDIVIDUALLY AND** | * | |
| **ON BEHALD OF ALL SIMILARLY** | * | |
| **SITUATIED INDIVIDUALS** | * | |
| | * | |
| Plaintiffs | * | |
| v. | * | Civil No. PJM 15-3068 |
| | * | |
| **SFS COMMUNICATIONS, LLC, ET AL.** | * | |
| | * | |
| Defendants | * | |
| | * | |
| | * | |
| | * | |

## <u>MEMORANDUM OPINION</u>

James Herbert Boyd, Jr. brings this action on behalf of himself and others similarly situated against SFS Communications, LLC ("SFS"); Ferdous Ahmed Sharif ("Sharif"); CU Employment, Inc. ("CU Employment"); Communications Unlimited Contracting Services, Inc. ("CUCSI"); Communications Unlimited, Inc. ("CUI"); Communications Unlimited Marketing Services, Inc. ("CUMSI"); Jack Spears ("Spears"); and Martin C. Rocha ("Rocha") ("Defendants"). He proceeds under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§ 3-413 and 3-415, and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab & Empl. §§ 3-502, 3-503, 3-505 and 3-507.2. On behalf of the proposed collective action members, Boyd seeks to recover unpaid minimum and overtime wages; improper deductions; liquidated damages and interest; and attorney's fees and litigation costs.

The Court considers Plaintiffs' Motion for Conditional Certification Pursuant to 29 U.S.C. § 216(b) and [for Approval of] Notice [to proposed collective action members]. ECF No. 37. For the reasons that follow, the Motion is **GRANTED IN PART AND DENIED IN PART.**

## I.

Putative collective action Plaintiffs are current or former technicians and installers who install internet and cable services, troubleshoot connectivity and service issues, collect cable boxes and routers that no longer work, instruct customers on how to use internet and cable services, and perform electrical work for SFS in Maryland, Virginia, and the District of Columbia. ECF No 37-1 at 10. SFS, a company owned and operated by Sharif, is a subcontractor of CUI, CUCSI, CUI and CUMSI (collectively the "CUI Enterprise"). ECF No. 1 ¶ 9. Rocha is an officer, director and owner of CUI Enterprise, *Id.* ¶ 16, and Spears is the Regional Manager of CUI Enterprises. *Id.* ¶ 18.

Boyd, on behalf of the proposed collective action Plaintiffs, alleges that Defendants collectively "knowingly fail[ed] to pay [collective action] Plaintiffs and all persons similarly situated for all overtime hours worked and/or by incorrectly computing the overtime pay due [collective action] Plaintiffs and other similarly situated persons and/or failing to pay the applicable minimum wage rates." ECF No. 1 ¶ 40. According to collective action Plaintiffs, Defendants compensate them on a piece rate basis for each installation, but allegedly fail to provide any compensation (or less than full compensation) for overtime. ECF No. 37-1 at 12. Defendants also allegedly make a variety of deductions – e.g., traffic tickets – from collective action Plaintiffs' paychecks without their consent, causing their pay to fall below minimum wage. *Id.* at 13.

The Court at this stage of the litigation considers two issues: First, whether to conditionally certify this as an FLSA collective action. *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012). Second, if the Court does so, it must then approve a notice to potential collective action members informing them of the lawsuit and their opportunity to opt into the collective action. Unlike class actions brought pursuant to Fed. R. Civ. P. 23, FLSA collective actions are an "opt-in scheme." *Id.* at 565.

2

**II.**

An action may be brought under the FLSA "against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C § 216. "Determinations of the appropriateness of conditional collective action certification and court-facilitated notice are left to the court's discretion." *Syrja v. Westat, Inc.,* 756 F. Supp. 2d 682, 686 (D. Md. 2010). Courts determine whether employees are similarly situated for the purposes of the FLSA in two stages.

At the present stage of the litigation, where Plaintiffs seek to send notice to other prospective collective action members, courts "make[] a threshold determination of 'whether the plaintiffs have demonstrated that potential class members are similarly situated,'" "such that court-facilitated notice to the putative class members would be appropriate." *Syrja v. Westat, Inc.,* 756 F. Supp. 2d 682, 686 (D. Md. 2010)(*quoting Camper v. Home Quality Mgmt., Inc.*, 200 F.R.D. 516, 519 (D.Md.2000)). To clear this threshold, courts have only required a "modest showing." *Butler,* 876 F. Supp. 2d at 567. The evidence need not "enable the court to determine conclusively whether a class of 'similarly situated' plaintiffs exists." *Id.* While mere allegations in the complaint alone do not suffice, "factual evidence by affidavits or other means," can accomplish the required showing. *Williams v. Long,* 585 F. Supp. 2d 679, 684 (D. Md. 2008).

Following conditional certification of the collective action and after discovery, courts engage in a more stringent exercise to determine whether to unconditionally certify the collective action. *Rawls v. Augustine Home Health Care, Inc.,* 244 F.R.D. 298, 300 (D. Md. 2007).

In the present case, the parties have stipulated to a proposed collective action membership of "all current and former Technicians/Installers who performed installation repair work in Maryland, Virginia, and Washington, DC for SFS from September 24, 2012 to the present." ECF No. 38 at 1. In support of that contention, nine Plaintiffs submitted affidavits attesting to their routine work hours and the mechanism by which they were paid. *See* ECF Nos. 37-2, 37-3, 37-4, 37-5, 37-6, 37-7, 37-8, 37-9, 37-10.

Accordingly, the Court **GRANTS** the Motion for Conditional Certification Pursuant to 29 U.S.C. § 216(b).

### III.

The FLSA requires that each potential member of the proposed collective action affirmatively file his or her "consent in writing" with the court to opt into the action. 29 U.S.C. § 216 (b). "[T]he court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989). To accomplish this, courts often authorize the issuance of a formal notice to potential collective action members. *Id.* at 171. The court is supposed to "monitor[] preparation and distribution of the notice," so that it can "ensure that it is timely, accurate, and informative." *Id.* at 172.

The FLSA and case law do not prescribe the form and method of this notice. *Mendoza* 2016 WL 3440007 at *19. Courts have broad discretion to determine "the details of the notice sent to potential opt-in plaintiffs." *Mcfeeley v. Jackson St. Entm't, LLC,* No. CIV.A. DKC 12-1019, 2012 WL 5928902, at *5 (D. Md. Nov. 26, 2012).

Plaintiffs in this case have attached to their Motion a proposed notice to potential collective action members. *See* ECF No. 37-12. Although the parties have narrowed the contested issues and the Court adopts the negotiated resolutions to the extent there is consensus, disagreements remain with respect to several issues which the Court must resolve.

### i. *Contacting Potential Plaintiffs*

Plaintiffs ask the Court to order Defendants to provide a computer-readable database, including the names, phone numbers, email addresses, last known mailing addresses, and dates of employment for all potential collective action members. Defendants submit that "[t]he court must take pains . . . to avoid stirring up of litigation through unwarranted solicitation," *Mendoza v. Mo's Fisherman Exchange, Inc*., No. ELH-15-1427, 2016 WL 3440007, at *19 (D. Md. Jun. 22, 2016), and suggest that providing phone numbers is a step too far in that direction. They also claim that they do not have email addresses for all their employees and former employees.

Courts in this district have ruled both ways on this issue. In *Mendoza*, citing privacy concerns, Judge Hollander was "unpersuaded that plaintiffs require phone numbers for potential plaintiffs in order to provide effective notice of the collective," but ordered the disclosure of email addresses. 2016 WL 3440007, at *20. *See also Butler* 876 F. Supp. 2d at 575 n. 17. Other courts have found that plaintiffs must demonstrate a "special need" in order to allow disclosure of telephone numbers. *See e.g. Cedillos-Guevara v. Mayflower Textile Servs., Co.,* No. CIV.A. GLR-14-196, 2014 WL 7146968, at *4 (D. Md. Dec. 12, 2014). In contrast, Judge Nickerson of this court ordered disclosure of both phone numbers and email addresses without a demonstrable special need in *Mercado v. N. Star Foundations, Inc.*  No. CIV.A. WMN-10-3467, 2011 WL 1557887, at *4 (D. Md. Apr. 21, 2011).

This Court believes and holds that Defendants **SHALL PRODUCE** a computer-readable database with all the contact information requested by Plaintiffs, including phone numbers and email addresses to the extent Defendants possess them. From a practical standpoint, four-year-old mailing addresses may be outdated, but phone numbers and email addresses are more likely to have remained constant, which would facilitate contact with potential Plaintiffs who may have changed homes. In addition, potential collective action members who will be contacted by phone or email are the very same people who will be targeted with any mailing; the addition of other modes of communication simply increases the likelihood that these people will be reached. The Court sees little danger of "stirring up litigation" on the part of new litigants. Plaintiffs do not have to demonstrate a special need to justify the disclosure of phone numbers. Defendants, by their own admission, do not have email addresses for all potential members. Defendants are simply asked to provide the appropriate contact information they possess – nothing more, nothing less.

The same logic applies to the mailing of a reminder postcard halfway through the opt-in period, which has been proposed by Plaintiffs and opposed by Defendants. This is nothing more than a targeted second contact with those likely to be eligible to join the collective action. The Court will permit the reminder postcard half way through the opt-in period.

*ii.  Posting Notice of the Lawsuit*

Plaintiffs request that the Court order Defendants to post the notice of the pending action "in an appropriate, visible, accessible location at each SFS/CUI warehouse." ECF No. 37-1 at 23. Defendants counter that this notice is "not sufficiently tailored to notify members of the collective only." However, "[p]hysical posting of notices at worksites is a standard element of

FLSA notice plans in this District." *Mendoza* 2016 WL 3440007 *21. The Court will therefore **ORDER** Defendants to post the notice as requested by Plaintiffs for the duration of the opt-in period.

Plaintiffs also seek permission to maintain a webpage entitled "SFS Communication: Wage and Hour Lawsuit" that would contain "1) the name of the case (2) the full text of the Notice, (3) downloadable versions (PDFs and/or Word documents) of the Notice and the Opt-In form, (4) the Notice deadline, and (5) Plaintiffs' attorneys' contact information." ECF No. 37-14 at 2. In a case such as this, where there is a small, limited pool of approximately 100 potential plaintiffs who are presumably literate in English, and for whom the Defendants have personnel records, the benefits of a website are questionable. In contrast, because SFS does not itself maintain a website of its own, an internet search for SFS would presumably lead to the collective action site, without reciting the positive aspects of Defendants' activities, potentially causing undue reputational harm. The Court believes that this potential harm outweighs the benefits such that it conditionally declines to grant Plaintiffs permission to construct a collective action website. That said, should SFS create a corporate website, Plaintiffs may petition the Court for reconsideration of this matter.

### iii. Opt-in Period

The parties also disagree about the length of the opt-in period. Citing *Butler v. DirectSAT USA,* Plaintiffs ask for 90 days. 876 F. Supp. 2d 560, 575 (D. Md. 2012)("notice periods may vary, but numerous courts around the country have authorized ninety day opt-in periods for collective actions.") Citing *Byard v. Verizon W. Virginia, Inc.*, Defendants counter with a request for 30-60 days. 287 F.R.D. 365, 373 (N.D.W. Va. 2012)("Courts in this circuit routinely find that

an opt-in period between 30–60 days is appropriate.") Here, given that the pool of prospective collective action members is small, a 60-day opt-in period has relatively little chance of prejudicing the Plaintiffs because they will presumably be able to contact all prospective collective action members in that time. Therefore, the Court **WILL DIRECT** that potential Plaintiffs be given 60-days from the date the notice is mailed to opt-in.[1]

### iv.  Language of the Notice

Finally, the parties disagree as to several issues related to the wording of the actual Notice. Defendants ask to the Court to order (1) the inclusion of the name and contact information of defense counsel in the initial notice, (2) the exclusion of language guaranteeing that there will be no retaliation for joining the action, and (3) the disclosure of information related to attorney's fees. Plaintiffs take the opposite position.

With respect to including contact information about defense counsel, courts have taken a variety of positions both within the District of Maryland and around the country. *See Arevalo v. D.J.'s Underground, Inc.,* No. CIV.A. DKC 09-3199, 2010 WL 2639888, at *3 (D. Md. June 29, 2010)(*citing cases*). Though there is no uniform practice, courts in the District of Maryland have generally "identified defense counsel, but not with full contact information and, occasionally, including cautionary language to putative plaintiffs." *Id. (See also Cedillos-Guevara v. Mayflower Textile Servs., Co.,* No. CIV.A. GLR-14-196, 2014 WL 7146968, at *4 (D. Md. Dec. 12, 2014).

The Court will follow this precedent. Accordingly, the Court **DIRECTS** counsel to insert a new section in the Notice entitled "Defense Counsel," which should include the names and

---

[1] For good cause shown, the 60-day period can always be extended.

addresses but not the email addresses or phone numbers of defense counsel and should furthermore insert the following disclaimer below the contact information: "Defense counsel are obligated to represent the best interests of Defendants and have no legal obligation to you or your interests." Including at least the names of counsel for both parties allays any concern that the Court, in endorsing the Notice, may appear to be endorsing the position or one side or the other. At the same time, excluding defense counsels' phone numbers and email addresses and including the disclaimer tends to suggest to prospective collective action members who might be unfamiliar with the nuances of representation in litigation that one set of counsel proposes to represent them and the other to oppose them.

Defendants also request that the Court order Plaintiffs to the strike the paragraph titled "No Retaliation Permitted," arguing that there is has been no allegation or evidence of retaliation. ECF No. 38 at 9. Plaintiffs counter that including an anti-retaliation notice is both necessary and typical in FLSA notifications. ECF No. 39 at 10.  Courts in this district have allowed similar language in notices to potential collective action members. *See e.g. Cedillos-Guevara,* 2014 WL 7146968, at *4; *Alderoty v. Maxim Healthcare Servs., Inc.,* No. CIV.A. TDC-14-2549, 2015 WL 5675527, at *14 (D. Md. Sept. 23, 2015). The logic is clear – potential collective action members unfamiliar with the FLSA regime and its prohibition against retaliation may be chilled from participating in the absence of language of reassurance. The Court declines to order the language regarding retaliation removed.

Finally, Defendants contend that the Notice should include details about the contingency fee arrangement with Plaintiffs' counsel as well as a notification that Plaintiffs may be liable for costs if they lose. ECF No. 38 at 10. Once again, courts have diverged on this question, though it is undisputed that Plaintiffs' counsel is obligated to discuss their fee arrangement with potential

opt-in plaintiffs early in the proceedings and before the case is settled or litigated. *Regan v. City of Charleston, S.C.*, No. 2:13-CV-3046-PMD, 2014 WL 3530135, at *9 (D.S.C. July 16, 2014). Given the potentially complicated nature of contingency arrangements and the fact that counsel are required to address their arrangement before a Plaintiff opts-in, the Court declines to require a discussion of the fee arrangement in the Notice.

It is a "close case" as to whether the notice should include a disclosure that Plaintiffs may be liable for costs if they do not prevail. *Byard v. Verizon W. Virginia, Inc.*, 287 F.R.D. 365, 374 (N.D.W. Va. 2012). Some courts have required simple disclosures such as "[i]f you do not prevail on your claim, court costs and expenses may possibly be assessed against you." *Id.* at 375. Others have rejected any such language, reasoning that such a disclosure creates the risk of a chilling effect which outweighs the risk that costs will be assessed. *Ratliff v. Pason Sys. USA Corp.,* No. 4:15-CV-2376, 2016 WL 4275434, at *1 (S.D. Tex. July 21, 2016). Given this potential risk and the likely small dollar amount of any costs, the Court will not require the inclusion of this language in the Notice.

## IV.

For the foregoing reasons:

1. Plaintiffs' Motion for Conditional Certification Pursuant to 29 U.S.C. § 216(b) and Notice, ECF No. 37, is **GRANTED IN PART AND DENIED IN PART**;

2. Conditional certification of the following collective action membership is **GRANTED**: All current and former technicians/installers who performed installation and repair work for SFS in Maryland, Virginia, and Washington D.C. for the period of December 4, 2012 to present;

3.  Lead Plaintiff Boyd **SHALL** notify all members of the conditionally certified collective action of their right to opt-in to this litigation by executing an appropriate consent as required by the Fair Labor Standards Act, 29 U.S.C. § 216(b);

4.  Lead Plaintiff Boyd **SHALL** modify his proposed Notice to members of the conditionally certified collective action to comport with the specifications set forth in this Memorandum Opinion and the parties shall jointly re-submit a proposed final Notice to the Court for approval within seven (7) days of the date of this Order;

5.  Defendants **SHALL** produce to Plaintiffs' counsel a computer-readable list of all potential members of the conditionally certified collective action including the names, last known mailing addresses, telephone numbers, dates of employment, and email addresses (to the extent they are in Defendants' possession) within thirty (30) days of the date of this Order;

6.  Plaintiffs **SHALL** mail a copy of the court-approved Notice, along with forms to consent to become a party plaintiff, within fifteen (15) days following the Court's approval of the Notice or within fifteen (15) days of the production of the list of members of the conditionally certified collective action to Plaintiffs, whichever is later. Plaintiffs **SHALL** file with the court any completed forms to consent to become party plaintiff within sixty (60) days of that mailing;

7.  Defendants **SHALL** post the court-approved Notice in an appropriate, visible location in SFS/CUI warehouses for the duration of the sixty (60) day opt-in period.

A separate Order will **ISSUE**.

_____/s/_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**January 26, 2017**