# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JAMES BOYD JR.** *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. **15-3068 PJM** |
| **SFS COMMUNICATIONS, LLC** *et al.*, | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

On April 15, 2021, following two virtual hearings on the parties' cross-motions for summary judgment and supplemental briefing on certain issues, the Court made a final determination as to most of the issues in this case. Pursuant to the Court's order, the parties thereafter filed a Joint Submission containing updated damages calculations based on the Court's ruling with respect to Defendants' liability and other merits determinations. All that remains is for the Court to resolve the parties' final disagreement as to damages, which the Court now undertakes to do.

### I.

Recapping briefly: Plaintiffs are installation and service technicians who serviced the private homes of Comcast customers while employed by Defendant SFS Communications, LLC ("SFS"), a subcontractor to Defendants CU Employment, Inc. and Communications Unlimited Contracting Services, Inc. (collectively "CUI"), which had or have a contract with Comcast.[1] Plaintiffs alleged in this case that, among other violations, Defendants failed to pay them overtime compensation, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-413 and 3-

---

[1] Ferdous Sharif, who owns and operates SFS, is also named as an individual Defendant.

415, and the Maryland Wage Payment and Collection Law ("MWPCL"), *id.* §§ 3-502, 3-503, 3-505, and 3-507.2.

On April 15, 2021, the Court issued an Opinion and Order finding Defendants CUI, SFS, and Sharif jointly and severally liable to Plaintiffs for unpaid overtime wages in violation of the FLSA and MWHL and for unpaid overtime and unauthorized deductions in violation of the MWPCL. Mem. Op., ECF No. 190 ("Apr. 15 Mem. Op."); Order, ECF No. 191 ("Apr. 15 Order"). The Court also resolved several discrete legal and factual issues raised by the the parties' arguments but deferred ruling on the matter of final damages. The Court gave the parties an opportunity to submit new damages calculations based on the findings in its Opinion. The Court directed the parties to file a joint written submission providing their updated damages calculations, highlighting any disagreements. On June 14, 2021, the parties filed the present Joint Submission on Damages and Motion for Judgment. ECF No. 192.

## II.

As the Court has held, SFS failed to track its technicians' work hours and provided them no overtime pay, sometimes paying them less than minimum wage. Prior to 2012, SFS technicians were assigned jobs through paper work orders distributed at CUI warehouses each morning, but starting in late 2012, work orders were assigned electronically. With the advent of electronic assignments, technicians were able to go directly from their homes to their first job, unless they needed to visit a CUI warehouse to, for example, retrieve or return installation equipment. During the winter of 2013, Comcast began using a digital system known as Workforce (WFX), or TechNet, to track the status of technicians in the field. Technicians used this system to log status updates to indicate when they were, for example, en route to a job (ENROUTE), on a job (ONJOB), on a break (BREAK), or available for a new job assignment (AVAIL). Although the

2

WFX system was able to collect some data based on the technicians' status updates ("Comcast data"), throughout both the paper work-order period and the handheld-device period SFS and CUI failed to track actual hours that the SFS technicians worked.

In its April 15 order, the Court determined that "[a]ny time between the first and last status updates of a given workday during which Plaintiffs were traveling to assignments, working on assignments, or available to receive new assignments shall be considered compensable time." The parties agree that technicians should be credited with compensable time for relevant status entries that occurred *between* the first and last ONJOB status entries of the day. However, the parties disagree on whether to credit technicians with compensable time for ENROUTE and AVAIL status entries that occurred before the first or after the last ONJOB entry of the day.[2]

Plaintiffs argue that all status entries representing compensable time, including those reflecting time spent before the first or after the last ONJOB of the day, should be included in the calculation of the hours they worked. They base their argument on the Court's determination that days on which only an ENROUTE status was recorded should be counted as workdays. In its April 15 Opinion, the Court noted that the Comcast data include examples of when a technician traveled to a job (ENROUTE) and the customer was unavailable such that no job was completed and no ONJOB status recorded. Plaintiffs argue that this scenario could just as easily have occurred before the first or after the last ONJOB. Similarly, a status of AVAIL (i.e., available for a new job assignment) could be entered at the beginning or the end of the day after a technician called on the first or last customer of the day and determined that the customer was not home.

---

[2] This disagreement accounts for nearly all of the difference between the parties' total damages calculations: CUI argues for an average of 46.3 hours worked per week, with an average of 10.1 overtime hours, leading to damages totaling $1,262,502.87, *see* Ex. 7, ECF No. 192-7; Plaintiffs argue for an average of 55 hours worked per week, with 17.4 average overtime hours, leading to damages totaling $1,950,155.65, *see* Ex. 4, ECF No. 192-4.

3

Defendants argue that Plaintiffs are wrong to ask the Court to assume that all ENROUTE or AVAIL status entries should be treated as compensable time. They ground their argument in a few specific examples of what appear to be anomalies in two individual Plaintiffs' status entries. As to the first individual Plaintiff, on one occasion he entered himself as ENROUTE late in the evening without a subsequent ONJOB status entry, on another occasion he entered himself as ENROUTE early in the morning before his first ONJOB, and on a third occasion he entered himself as AVAIL late in the evening, hours after Comcast and its contractors would normally finish distributing job assignments for the day. The second individual Plaintiff whom Defendants cite on one occasion entered himself as ENROUTE in the morning and did not change his status again until the evening, nearly nine hours later, although technicians were rarely assigned jobs more than 30 minutes away by car.

These limited examples illustrate what the parties and the Court already know—that, for damages purposes, the Comcast data are quite imprecise, since the program was not designed to track the technicians' working hours. *See* Apr. 15 Mem. Op. at 15. That, in the Court's view, is enough to sink Defendants' argument. It would be improper to resolve the imprecision of the data in favor of employers who violated the law by failing to track their employees' hours; the Court declines to make Defendants the beneficiaries of their own error. Accordingly, the Court holds that all ENROUTE and AVAIL status entries before the first ONJOB and after the last ONJOB of the day shall be counted as compensable working time.

### III.

Accordingly, the Court awards Plaintiffs damages totaling $1,950,155.65, based on Plaintiffs' computation finding for each individual Plaintiff an average of 55 hours worked per

4

week and an average of 17.4 overtime hours during the relevant period. *See* ECF No. 192-4. A separate Order will issue.

July __1__, 2021

/s/  
PETER J. MESSITTE  
UNITED STATES DISTRICT JUDGE